# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA
### OKLAHOMA CITY DIVISION

| | |
|---|---|
| DENNEY DODSON, Individually and for Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>CIMAREX ENERGY CO.,<br><br>    Defendant. | Case No. CIV-20-394-HE<br><br>JURY TRIAL DEMANDED<br><br>COLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Denney Dodson (Dodson) brings this Fair Labor Standards Act (FLSA) lawsuit to recover the unpaid overtime wages and other damages owed to him and other similarly situated workers by Cimarex Energy Co. (Cimarex).

2.      Dodson worked for Cimarex as a Drilling Consultant.[1]

3.      Dodson and the other Day Rate Workers (as defined below) regularly work in excess of 40 hours each week.

4.      But Cimarex does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

5.      Instead of paying overtime, Cimarex classified Dodson and other Day Rate Workers as independent contractors and paid them a day rate with no overtime.

---

[1] In the oil and gas industry, Drilling Consultants are also known as Drill Site Managers, Company Men, Drill Safety Managers, Company Representatives, etc.

6.     Cimarex never paid Dodson and the Day Rate Workers like him a salary.

7.     This collective action seeks to recover unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial amount of the claim occurred in this District and Division.

10.     Specifically, Dodson worked for Cimarex in and around Calumet, OK. Dodson worked overtime for Cimarex in and around Calumet, OK, and Cimarex failed to pay Dodson overtime for the work he did in and around Calumet, OK.

11.     Further, Cimarex conducts substantial business in and around Calumet, OK.

## THE PARTIES

12.     Dodson worked for Cimarex as a Drilling Consultant from approximately 2002 until January 2018.

13.     Throughout his employment with Cimarex, Cimarex paid Dodson a day rate with no overtime compensation.

14.     Dodson's consent to be a party plaintiff is attached as Exhibit 1.

15.     Dodson brings this action on behalf of himself and all other similarly situated workers who were paid by Cimarex's day rate system.

16.     Cimarex paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek in a

workweek in violation of the FLSA.

17.    The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, Cimarex who were classified as independent contractors and paid a day rate with no overtime at any time in the past 3 years ("Day Rate Workers").**

18.    Cimarex can be served with process through its registered agent: **Corporation Service Company, 10300 Greenbriar Place, Oklahoma City, Oklahoma 73159.**

## COVERAGE UNDER THE FLSA

19.    At all times hereinafter mentioned, Cimarex has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.    At all times hereinafter mentioned, Cimarex has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.    At all times hereinafter mentioned, Cimarex has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as debris removal equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

22.     At all times hereinafter mentioned, Dodson and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

23.     Cimarex treated Dodson and the Day Rate Workers as employees and uniformly dictated the pay practices it applied to Dodson and the Day Rate Workers.

24.     Cimarex's misclassification of Dodson and the Day Rate Workers as independent contractors does not alter their status as an employee for purposes of the FLSA.

**FACTS**

25.     "Cimarex is an exploration and production company with operations in Oklahoma, Texas and New Mexico."[2]

26.     To provide its services, Cimarex hires personnel (like Dodson) to perform drilling services.

27.     Cimarex does not hire these workers on a project-by-project basis.

28.     Rather, Cimarex hires and treats these workers just like regular, even if sometimes short-term, employees.

29.     Many of these workers worked for Cimarex on a day rate basis and make up the proposed putative class of Day Rate Workers.

30.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

31.     For example, Dodson worked for Cimarex as a Drilling Consultant from approximately 2002 until January 2018.

---

[2] https://www.cimarex.com/about-cimarex/about-cimarex-overview/default.aspx (last visited April 27, 2020).

32.    Throughout his employment with Cimarex, Cimarex paid him on a day rate basis.

33.    Cimarex paid Dodson and the Day Rate Workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to pay them overtime when they worked in excess of 40 hours in a workweek.

34.    Cimarex does not pay Dodson and the Day Rate Workers a salary as required for exemption under the FLSA.

35.    If Dodson and the Day Rate Workers did not work, they did not get paid.

36.    Dodson and the Day Rate Workers do not receive overtime pay.

37.    This is despite the fact Dodson and the Day Rate Workers often work at least 12 hours a day, for 7 days a week, for weeks at a time.

38.    Although he typically worked 7 days a week, for at least 12 hours a day, Dodson did not receive any overtime pay.

39.    Dodson and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

40.    Dodson's work schedule is typical of the Day Rate Workers.

41.    Cimarex knows Dodson and the Day Rate Workers work for at least 12 hours a day, for 7 days a week, for weeks on end.

42.    Cimarex's records reflect the fact that Dodson and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

43.    Cimarex does not pay Dodson or the Day Rate Workers overtime for hours worked in excess of 40 in any of those weeks.

44.     Instead, Cimarex pays Dodson and the Day Rate Workers on a day rate basis.

45.     Dodson and the Day Rate Workers are not employed on a salary basis.

46.     Dodson and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from Cimarex irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

47.     Cimarex's policy of paying Dodson and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Dodson and the Day Rate Workers of overtime for the hours they work in excess of 40 hours in a single workweek.

48.     Cimarex knew Dodson and the Day Rate Workers worked more than 40 hours in a week.

49.     Cimarex controls Dodson and the Day Rate Workers' work.

50.     Cimarex requires Dodson and the Day Rate Workers to follow Cimarex's policies and procedures.

51.     Dodson and the Day Rate Workers' work must adhere to the quality standards put in place by Cimarex.

52.     Dodson and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

53.     As a Drilling Consultant, Dodson's primary job duties included ensuring that Cimarex well or drilling project was safely completed in accordance with Cimarex specifications, policies, and expectations.

54.    Without the job performed by Dodson and the Day Rate Workers, Cimarex would not be able to complete its business objectives.

55.    Dodson and the Day Rate Workers relied on Cimarex for work and compensation.

56.    Dodson and the Day Rate Workers worked in accordance with the schedule set by Cimarex.

57.    Dodson and the Day Rate Workers cannot subcontract out the work they are assigned by Cimarex.

58.    Dodson and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

59.    Dodson and the Day Rate Workers did not possess any specialized or unique skill set other than that maintained by all other workers in their respective positions.

60.    Dodson and the Day Rate Workers did not market their services while employed by Cimarex.

61.    Dodson and the Day Rate Workers worked exclusively for Cimarex during the relevant period.

62.    Dodson and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

63.    Cimarex set Dodson and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Cimarex.

64.     At all relevant times, Cimarex maintained control, oversight, and direction of Dodson and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

65.     Cimarex knew Dodson, and other Day Rate Workers, worked more than 40 hours in a week.

66.     Cimarex knew, or showed reckless disregard for whether, the Day Rate Workers were not exempt from the FLSA's overtime provisions.

67.     Nonetheless, Cimarex failed to pay Dodson and the Day Rate Workers overtime.

68.     Cimarex knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Dodson and the Day Rate Workers of overtime compensation in violation of the FLSA.

69.     Cimarex's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

70.     Cimarex willfully violated the FLSA.

**CAUSE OF ACTION**
**FLSA VIOLATIONS**

71.     Cimarex's day rate pay plan violates the FLSA because Dodson and the other Day Rate Workers did not receive overtime pay for hours they worked in excess of 40 in a week.

72.     Cimarex knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

73. Cimarex's failure to pay overtime compensation to the Day Rate Workers was not based on any reasonable interpretation of the law.

74. Nor was Cimarex's decision not to pay its Day Rate Workers overtime made in good faith.

75. Accordingly, Dodson and the Day Rate Workers are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

76. Dodson incorporates all previous paragraphs and alleges that the illegal pay practices Cimarex imposed on Dodson were likewise imposed on the Day Rate Workers.

77. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

78. Numerous other individuals who worked with Dodson indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

79. Based on his experiences and tenure with Cimarex, Dodson is aware that Cimarex's illegal practices were imposed on the Day Rate Workers.

80. The Day Rate Workers were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

81. Cimarex's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

82.    Dodson's experiences are therefore typical of the experiences of the Day Rate Workers.

83.    The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

84.    Dodson has no interests contrary to, or in conflict with, the Day Rate Workers.

85.    Like each Day Rate Worker, Dodson has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

86.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

87.    Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and Cimarex will reap the unjust benefits of violating the FLSA and PMWA.

88.    Furthermore, even if some of the Day Rate Workers could afford individual litigation against Cimarex, it would be unduly burdensome to the judicial system.

89.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

90.    The questions of law and fact common to the Day Rate Workers predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

        a.    Whether Cimarex employed the Day Rate Workers within the meaning of the applicable state and federal statutes, including the FLSA;

b.  Whether members of the Classes were improperly misclassified as independent contractors;

c.  Whether Cimarex's decision to classify the Day Rate Workers as independent contractors was made in good faith;

d.  Whether Cimarex's day rate pay practice meets the salary basis test;

e.  Whether Cimarex's decision to not pay time and a half for overtime to the Day Rate Workers was made in good faith;

f.  Whether Cimarex's violation of the FLSA was willful; and

g.  Whether Cimarex's illegal pay practices were applied uniformly across the nation to all Day Rate Workers.

91.  Dodson's claims are typical of the claims of the Day Rate Workers. Dodson and the Day Rate Workers sustained damages arising out of Cimarex's illegal and uniform employment policy.

92.  Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

93.  Therefore, this issue does not preclude class or collective action treatment.

## JURY DEMAND

Dodson demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Dodson prays for judgment against Cimarex as follows:

a.  An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the Day Rate

11

Workers with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      For an Order pursuant to Section 16(b) of the FLSA finding Cimarex liable for unpaid back wages due to Dodson and the Day Rate Workers for liquidated damages equal in amount to their unpaid compensation;

c.      For an Order appointing Dodson and his counsel as Class Counsel to represent the interests of the FLSA collective of Day Rate Workers;

d.      For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  */s/Michael A. Josephson*
       **Michael A. Josephson**
       Texas Bar No. 24014780
       OK Fed. ID No. 14-145
       **Andrew W. Dunlap**
       Texas Bar No. 24078444
       OK Fed. ID No. 14-148
       **Taylor A. Jones**
       Texas Bar No. 24107823
       (*pro hac vice application forthcoming*)
       **JOSEPHSON DUNLAP, LLP**
       11 Greenway Plaza, Suite 3050
       Houston, Texas 77046
       713-352-1100 – Telephone
       713-352-3300 – Facsimile
       mjosephson@mybackwages.com
       adunlap@mybackwages.com
       tjones@mybackwages.com

12

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**