**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

DENNEY DODSON, Individually and for
Others Similarly Situated,

v.

CIMAREX ENERGY CO.

Case No. CIV-20-394-HE

### UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT

Plaintiff Denney Dodson ("Dodson") submits this unopposed motion for approval of the settlement of Dodson and the Settlement Class Members[1] claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* against Defendant Cimarex Energy Co. ("Cimarex") (together, the "Parties"). The Parties' agreement represents a fair and reasonable resolution of a *bona fide* dispute of Dodson and the Settlement Class Members' FLSA claims, and the Court should approve the Parties' Settlement Agreement (Ex. 1) in full.

The Parties' Settlement Agreement provides Dodson and the Settlement Class Members with a reasonable recovery in light of the risks inherent in continued litigation and trial. Cimarex has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this partial settlement, the Parties' Settlement Agreement is in both parties' best interest.

---

[1] Capitalized terms used in this Motion have the same definition as those same terms in the Parties' Settlement Agreement. Ex. 1, filed under seal. Thus, "Settlement Class Members" includes the nineteen (19) individuals identified on Exhibit A to the Parties' Settlement Agreement.

1

Accordingly, Dodson respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1) in full.

## 1.    PROCEDURAL HISTORY

Dodson filed this putative collective action on April 28, 2020, on behalf of himself and other similarly situated drilling consultants, alleging Cimarex misclassified him and other drilling consultants as independent contractors and paid them a day rate with no overtime pay in violation of the FLSA. ECF 1. Cimarex denies Dodson's allegations and filed a Motion to Dismiss Plaintiff's Complaint. ECF 19.

On August 14, 2020, the Parties jointly moved the Court to stay proceedings so that they could pursue potential settlement negotiations. ECF 22; ECF 24; ECF 26; ECF 29; ECF 31; ECF 33; ECF35; ECF 38; ECF 40; ECF 43. Throughout these stays, Cimarex provided Plaintiff's counsel with invoices so that Dodson and his counsel could calculate an initial estimate of alleged backpay due to Plaintiff and the Putative Class Members, which the Parties were then able to use as a basis to resolve this matter. *Id.*

On November 18, 2021 the Parties executed a formal Settlement Agreement (Ex. 1) that Plaintiff now requests the Court approve.

## 2.    SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS.

### A.  The Gross Settlement Fund.

The Parties agreed to settle Dodson's and the Settlement Class Members' FLSA claims.[2] *Id.* at ¶ 8. The Gross Settlement Amount includes the settlement payments to Dodson

---

[2] Importantly, however, opt-in Plaintiff Jimmie Taylor's claim against Cimarex is not a part of this settlement agreement. The Parties are currently working towards a resolution of Mr. Taylor's claims against Defendant.

and the Settlement Class Members, Class Counsel's attorneys' fees, Class Counsel's out-of-pocket litigation expenses, settlement administration expenses, and a Service Award to Dodson. *Id.* at ¶ 17.  Class Counsel shall receive reimbursement for the reasonable costs expended during this litigation, including reasonable costs associated with the administration of the settlement. *Id.* The Settlement Agreement also provides Dodson with a service award to compensate him for his service as class representative. *Id.* All administration costs, attorneys' fees, and litigation expenses are included in the Gross Settlement Amount, and Cimarex shall not make any payment beyond the Gross Settlement Amount. *Id.*

### B.  The Net Settlement Amount.

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by and day rates paid to the Settlement Class Members during the applicable Class Period. To calculate the *pro rata* settlement allocations, Class Counsel calculated Cimarex's share of each Settlement Class Members' alleged back wages under the FLSA based on the number of workweeks they worked and the day rate they received during the three-year statutory period using pay data the Parties obtained from Cimarex. Using this damage model, Class Counsel applied Dodson's and each Settlement Class Member's *pro rata* share to the Net Settlement Amount to determine Dodson's and each Settlement Class Member's settlement payment.

The settlement payments will be reported on an IRS Form 1099. *Id.* at ¶ 29.c.ii. *Id.* Likewise, Dodson's Service Award will be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶ 28.b.i.

**C. Notice of Settlement and Release of Claims Against Cimarex <u>Only</u>.**

10 days after the Court approves the Settlement Agreement, the Settlement Administrator will send the Settlement Notice, Consent to Join and Release Forms along with a W-9 tax form to each of the Putative Class Members via first class mail. *Id.* at ¶ 21; *see also* Exhibit 1-B and 1-C. The Settlement Notice informs the Settlement Class Members of the nature of this lawsuit, the fact this lawsuit has settled, their estimated settlement payment, how to participate in this settlement, and the claims a Participating Settlement Class Member will release. *Id.* The Settlement Administrator will send an identical reminder Settlement Notice postcard to the Settlement Class Members 20 days before the close of the Notice Period. Ex. 1 at ¶ 21.

Those Settlement Class Members who return an executed Claim Form within 60 days of the Settlement Administrator initially sending the Settlement Notice will participate in the settlement, receive their settlement payment, and release Cimarex **only** from their wage/hour claims related to the time each Participating Settlement Class Member was staffed to, or performing work for, Cimarex, and employed by GSM Oilfield Services, Inc. *Id.* at ¶¶ 26a.

Importantly, the Settlement Class Members are expressly **not** releasing GSM Oilfield Services, Inc. *Id.* To be clear, the Settlement Class Members are only providing a release to Cimarex, and any claims they have against GSM Oilfield Services, Inc. are expressly preserved. *Id.* Thus, these portions of the Settlement Class Members' claims also remain. *Id.* However, if one or more Participating Settlement Class Members asserts a claim GSM Oilfield Services, Inc. for the same work and workweeks performed for the benefit of Cimarex covered by the Settlement Agreement, the amount of such damages sought or recoverable from GSM Oilfield

Services, Inc. shall be reduced by the sum of any payment made to such Participating Settlement Class Members. The Settlement Agreement is intended to constitute a complete discharge of any and all liability of Cimarex to Participating Settlement Class members and result in a reduction of the damages recoverable from GSM Oilfield Services, Inc. to the fullest extent permitted by applicable law. *Id.* at ¶ 34.

Finally, Cimarex will fund the Gross Settlement Amount into a Qualified Settlement Fund ("QSF") no later than fourteen (14) days after the close of the Notice Period. *Id.* at ¶ 29.

**3.      THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT.**

**A.  The Legal Standard for Approval of FLSA Settlements.**

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

"However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

That being said, where an FLSA collective action settlement involves potential plaintiffs not directly before the Court who will have an opportunity to receive notice of the settlement and opt-into the collective (as is the case here), courts in the Tenth Circuit have found the application of *Lynn's Food Stores* is appropriate. *Id.* at *2-3. "Settlements may be permissible in the context of a suit brought by employees because initiation of the action … provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

### B. The Court Should Approve the Parties' Settlement.

#### i. The Settlement Resolves a *Bona Fide* Dispute.

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum

wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

Cimarex is an exploration and production company with operations in Oklahoma, Texas, and New Mexico. ECF. 1 at ¶ 25. To provide its services, Cimarex hires personnel like Dodson to perform drilling services and pays them on a day rate basis. *Id.* at ¶ 26.

Dodson alleges Cimarex misclassified him and the Settlement Class Members as independent contractors and paid them a day rate with no overtime in violation of the FLSA. *Id.* at ¶ 24. Cimarex denies that Dodson and the Settlement Class Members are owed any overtime wages and contends that these drilling consultants were properly classified and paid under the FLSA.

Further, because Dodson and the Settlement Class Members were paid on a day rate basis, Dodson alleges Cimarex should have, but did not track these drilling consultants' actual hours worked. Indeed, Dodson contends he and the Settlement Class Members typically worked 12-hour shifts for 6 or 7 days a week. ECF 1 at ¶¶ 37-41. Cimarex, however, denies these allegations and denies that Dodson and the Settlement Class Members are owed any overtime wages.

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### ii.     The Terms of the Settlement are Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an FLSA settlement for fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

### a.     The Agreement Was Fairly and Honestly Negotiated.

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. That Parties gathered substantial data from Cimarex showing the days worked and compensation received by Dodson and the Settlement Class Members. Both Parties created damages calculations based on this data. The Parties went through

numerous offer and demand cycles. And the Parties continued their arm's length negotiations for several months. The negotiations by experienced counsel and assistance of an experienced mediator demonstrate the Settlement Agreement was fairly and honestly negotiated.

### b.    The Ultimate Outcome of the Litigation Was Unknown.

Second, questions of law and fact exist as to whether Cimarex is liable to Dodson and the Settlement Class Members and, if so, in what amounts. The Parties dispute, Dodson and the Settlement Class Members' status as employees, the hours worked, whether Cimarex acted in good faith and thus whether liquidated damages are appropriate, and whether Cimarex acted willfully, which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c.    The Value of the Settlement to the Settlement Class Members Is Significant.

Third, the immediate recovery offered by the proposed partial settlement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in lengthy and costly discovery, disputes and motion practice related to motions for certification and decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course, which may result in no recovery, the proposed settlement guarantees Dodson and the Settlement Class Members will receive a substantial recovery.

Indeed, the degree of success here is high because Cimarex anticipated vigorously

contested Dodson and the Settlement Class Members' claims, denies that the Settlement Class Members were improperly paid, improperly classified, underpaid, that any alleged damages are owed. Cimarex denies that the Settlement Class Members are entitled to liquidated damages or that it acted willfully. Finally, Cimarex denies that it was the employer of any Settlement Class Member or that it had any obligations to them under the FLSA or any other law.

In spite of the hotly contested case, the settlement provides the Settlement Class Members with approximately ███ of the three-year back wages. Ex. 1-A. This settlement represents substantial recovery considering the ongoing risks of litigation, the defenses at issue and the real possibility of a protracted fight for unpaid overtime. Further, because the scope of the settlement (and release) is limited to only Cimarex, the Settlement Class Members have not given up an of their rights to recover additional unpaid overtime from the GSM Oilfield Services, Inc. should they elect to do so.

### d.      The Parties Agree the Settlement Is Fair and Reasonable.

Fourth, the Parties agree that the settlement is fair and reasonable. The Settlement Agreement was signed by Dodson and Cimarex. All Settlement Class Members will be provided a Settlement Notice and may participate in the settlement should they choose to. If they do not wish to participate in the settlement, their claims will be unaffected. This supports that the Parties' settlement is fair and reasonable. This is especially true given the Settlement Class Members are only providing a release to Cimarex—and only for the time during which they were staffed to Cimarex by GSM Oilfield Services, Inc. —and any claims they have against GSM Oilfield Services, Inc., as well as those against Cimarex during a time they were not staffed by GSM Oilfield Services, Inc., are all expressly preserved.

10

e.      **Plaintiff's Attorneys' Fees and Costs Are Reasonable**

Plaintiff is entitled to recover his attorneys' fees and costs for his claims for overtime pay. *See, e.g.,* 29 U.S.C. § 216(b). Plaintiff's counsel believes that the Settlement Agreement's provision concerning attorney's fees and costs is fair and reasonable, as they are only receiving attorney's fees of ███ of the Gross Settlement Amount and reimbursement for expenses/costs. Plaintiff's Counsel's Award was separately negotiated, independently and after settlement of Plaintiff's recovery, and approval of this aspect of the settlement agreement is not required. Defendant does not oppose these amounts.

The Tenth Circuit exhaustively considered and approved the use of the percentage-of-the-fund method in *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). ████████ of the fund, has been found reasonable. *Friedman v. Quest Energy Partners LP*, No. CIV-08-936-M et al., 2010 WL 4925133, at *5 (W.D. Okla. Nov. 29, 2010); *Hoffman v. Poulsen Pizza LLC*, 2017 WL 25386, at *9 (same); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv- 01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (approving award of attorney's fees of 39% of total settlement and noting "this [request] is within the normal range for a contingent fee award" in FLSA collective action); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this

circuit"); *Slone v. Gulfport Energy Corp.,* No. 5:16-cv-01296-HE, (W.D. Okla. Sept. 25, 2018) (approving award of attorney's fees of 33.33% of total settlement).

Thus, Plaintiff's counsel's contingency fee is reasonable and appropriate.

## 4.   THE COURT SHOULD APPROVE THE SETTLEMENT NOTICE DOCUMENTS.

The Court should approve the Parties' proposed Settlement Notice and Claim Form (Ex. 1-B), as well as their agreed-upon follow up notice (Ex. 1-C), as these Settlement Notice documents are the best practicable means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed settlement. Indeed, as discussed *supra* in Section 2(C), the Notice is accurate, objective, and informative and provides the Settlement Class Members with all of the information necessary to make an informed decision regarding their participation in the settlement and its fairness. Accordingly, the Court should approve the Parties' proposed Settlement Notice and Claim Form (Ex. 1-B), as well as their agreed-upon follow up notice (Ex. 1-C).

## 5.   THE COURT SHOULD APPROVE DODSON'S SERVICE AWARD.

Dodson's requested service award is reasonable, and Cimarex does not object to the same. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See, e.g., Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.,* 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.,* 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."); *cf. Wagner,* No. CIV-19-947-J, ECF 39 (approving enhancement award to the named plaintiff/class representative). The reasonableness of a service award to a named plaintiff is

not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable").

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131.

Importantly, Courts in this Circuit have found significantly higher incentive awards reasonable in other FLSA/employment cases. *See, e.g., Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff).

The proposed service award to Dodson is reasonable, and Cimarex does not oppose this amount. The service award represents a mere ███ of the Gross Settlement Amount and is intended to recognize Dodson's initiative and efforts on behalf of the Settlement Class Members and the time and effort he contributed to this lawsuit and the settlement over the last year. Indeed, Dodson took a substantial risk in bringing the claims relating to Cimarex's alleged FLSA violations.

13

Because Dodson took significant personal risks in representing the interests of the Settlement Class Members and worked diligently to ensure the Class Members could recover the wages they are allegedly due, the proposed service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts on behalf of the Settlement Class.

## 6.    CONCLUSION.

For all the reasons set forth herein, Dodson respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1). Further, Dodson respectfully requests the Court approve the Parties' proposed Settlement Notice and Claim Form (Ex. 1-B), and their agreed-upon follow up notice (Ex. 1-C).

**Dated: November 23, 2021.**

Respectfully submitted,

**JOSEPHSON DUNLAP**

By: /s/ *Andrew W. Dunlap*
　　**Michael A. Josephson**
　　TX Bar No. 24014780
　　OK Fed. ID No. 14-145
　　**Andrew W. Dunlap**
　　TX Bar No. 2407844
　　OK Fed. ID No. 14-148
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Michael Burrage
Whitten Burrage
512 N. Broadway Avenue, Suite 300
Oklahoma City, OK 73102
mburrage@whittenburragelaw.com

**ATTORNEYS FOR PLAINTIFF &
THE SETTLEMENT CLASS**

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2021, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with Cimarex's Counsel, who confirmed Cimarex is unopposed to the requested relief as evidenced by the Parties' attached Settlement Agreement. *See* Ex. 1.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

DENNEY DODSON, Individually and for
Others Similarly Situated,

v.                                                                    Case No. CIV-20-394-HE

CIMAREX ENERGY CO.

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO**
**APPROVE FLSA SETTLEMENT**

Before the Court is Plaintiff's Unopposed Motion to Approve FLSA (Doc. No. __).

Plaintiff Denney Dodson, individually and on behalf of all others similarly situated

("**Plaintiff**"), and Defendant Cimarex Energy Co. ("**Defendant**") (collectively the "**Parties**")

have arrived at a settlement and have requested Court-approval of their settlement agreement.

After considering Plaintiff's Motion (Doc. No. __), including the Parties' Settlement

Agreement (Exhibit 1 to Plaintiff's Unopposed Motion) and its exhibits, the Notice Materials,

and the submissions of Counsel, the Court hereby finds and orders as follows:

1.      The Court **FINDS** that the settlement memorialized in the Parties' Settlement

Agreement attached as Exhibit 1 to Plaintiff's Unopposed Motion to Approve falls within the

range of reasonableness and, therefore, meets the requirements for approval.

2.      The Court **APPROVES** the Parties' Settlement Agreement attached as

Exhibit 1 to Plaintiff's Unopposed Motion to Approve.

3.      The Court **APPROVES** the full and final extinguishment of the Released

Claims of Plaintiff and the Participating Settlement Class Members as set forth in the

Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair

17

Labor Standards Act (FLSA).

4. The Court **APPOINTS**, for settlement purposes only, Josephson Dunlap, LLP, Bruckner Burch, PLLC, and Whitten Burrage, as Class Counsel for the purposes of Settlement and the releases and other obligations therein.

5. The Court **FINDS** Plaintiff's Service Award, as provided in the Settlement Agreement, is fair and reasonable.

6. The Court therefore **APPROVES** Plaintiff's Service Award.

7. This Court **APPROVES** CPT Group as Settlement Administrator to perform duties in accordance with the terms of the Settlement Agreement.

8. The Court **FINDS** the Notice of Settlement to be provided as set forth in the Settlement Agreement to be the best practicable means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed settlement. The Notice is accurate, objective, and informative and provides the FLSA Settlement Class Members with all of the information necessary to make an informed decision regarding their participation in the settlement and its fairness.

9. The Notice of Settlement of FLSA Lawsuit, attached to the Settlement Agreement as Exhibit B is **APPROVED**.

10. Neither this Order, Plaintiff's Unopposed Motion to Approve, the Settlement Agreements, other Approval pleadings, nor any other documents or information relating to the settlement of this litigation shall constitute, be construed to be, or be admissible in this litigation or any other proceeding as evidence: (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or comparable state laws or

18

rules, (b) of an adjudication of the merits of this litigation, (c) an adjudication of any of the matters subject to the Releases in the Settlement Agreement, (d) that any party has prevailed in this case, or (e) that Defendant or the Released Parties have engaged in any wrongdoing.

11.     The Court hereby **DISMISSES** Plaintiff's claims and all claims asserted therein **WITH PREJUDICE** in accordance with the Settlement Agreement, including the claims of Plaintiff and Participating Settlement Class Members. Provided however, opt-in Plaintiff Jimmie Taylor's claims are dismissed without prejudice , as he is not a Participating Class Member.

**IT IS SO ORDERED** this __ day of _____, 2021.

_____
Honorable Joe Heaton
Chief United States District Judge